New York Post, Monday, June 13, 2022    nypost.com

# GUN COMPROMISE

**PROGRESS:** A proposal from Democratic Sen. Chris Murphy (left inset) and Republican Sen. John Cornyn of Texas (right inset) encourages states to pass red-flag laws to prevent gun slaughter.



ENOUGH IS ENOUGH

AFP via Getty Images

## What's in the deal?

A group of 20 senators reached a deal Sunday on the framework for gun-safety legislation in the wake of the mass shootings in Uvalde, Texas, and Buffalo last month that killed 31 people.

**Here's what it includes:**

- Economic incentives for states to pass red-flag laws that allow law enforcement to remove weapons from people considered a risk to themselves or others.

- Allocates funds for mental-health resources and school-safety programs.

- Allows access to juvenile records for gun-buyers under 21 and extends background checks to allow for the screening.

- Closes the "boyfriend loophole" by barring convicted domestic abusers or those under restraining orders from buying firearms.

- Clarifies requirements about who needs to register as a licensed gun dealer to ensure background checks are being conducted on buyers.

- Cracks down on "straw buyers" who illegally purchase and traffic guns.

**It does not:**

By MARK MOORE

# Dem, GOP senators agree on safety pact

A bipartisan group of senators announced Sunday that it had reached a pact on proposed new gun-safety measures that would expand red-flag laws and background checks — but not ban assault weapons or raise the age to 21 to buy certain rifles.

"Today, we are announcing a commonsense, bipartisan proposal to protect America's chil-

to keep guns out of the hands of

"Our plan increases needed

"Obviously, it does not do ev-

10

nypost.com

New York Post, Monday, June 13, 2022

# Call for Don raps

## 'Indictable': Rep.

By BEN KESSLEN

A member of the House select committee investigating last year's riot at the Capitol on Sunday claimed the panel has enough evidence for federal prosecutors to indict former President Donald Trump.

Rep. Adam Schiff (D-Calif.) called for the Justice Department to "investigate any credible allegation of criminal activity, on the part of Donald Trump or anyone else."

"The rule of law needs to apply equally to everyone," Schiff said on ABC's "This Week."

"There are certain actions, parts of these different lines of effort to overturn the election that I don't see evidence the Justice Department is investigating."

Schiff is a member of the committee investigating the Jan. 6, 2021, riot, and was part of the first public hearing held on the events Thursday.

Members are making the case that Trump pushed lies about fraud in the 2020 election and helped incite his supporters to breach the Capitol in an attempt to stop the certification of President Biden's victory.

Trump denies any wrongdoing.

More evidence will be released when the hearings continue this week, and the committee said that Trump's campaign manager,

witnesses set to testify Monday.

"Once the evidence is accumulated by the Justice Department, it needs to make a decision about whether it can prove to a jury beyond a reasonable doubt the president's guilt or anyone else's," Schiff said. "But they need to be investigated if there's credible evidence, which I think there is."

The committee broadcast a dramatic montage of video clips from the riot in Thursday's prime-time hearing, which was watched by more than 20 million people.

The opening hour of the hearing concluded with the 11-minute video, parts of which were played during Trump's impeachment trial last year.

The second hour featured testimony from documentary filmmaker Nick Quested, who trailed members of the far-right Proud Boys group as they stormed the building.

Capitol Police Officer Caroline Edwards, who suffered a brain injury after being knocked unconscious when her head hit a flight of steps during a struggle with rioters, also testified.

"What I saw was just a war scene. It was something like I'd seen out of the movies. I couldn't believe my eyes. There were officers on the ground, you know, they were bleeding, they were throwing up," Edwards

## CITY IN CRISIS



# Smash-&-grab trio steal $32K in electronics

**IN AND OUT FAST:** Three men are seen in surveillance video (clockwise from top left) entering a T-Mobile at 1367 Broadway in Bushwick, Brooklyn, on May 3, smashing open display cases and fleeing with $3,200 worth of merchandise.

# Thieves targeting T-Mobile stores

By TINA MOORE

In the latest of a string of thefts against T-Mobile stores that have netted criminals more than $32,000, three thieves were caught on video brazenly yanking new phones right off of their displays at a Brooklyn outlet, cops said Sunday

number of N23 JDK, according to police.

About an hour later, the same suspects are believed to have hit a T-Mobile at 46-01 Queens Blvd. in Sunnyside, where they took $6,000 worth of merchandise, cops said.

at 1367 Broadway and snatched $1,100 worth of electronics, cops said.

Then May 21, they hit a T-Mobile at 18-22 College Point Blvd. in Queens, where they took $2,400 worth of electronics, according to cops.

7/5/2022

Merrick Garland

Enclosed you see we have a National Gun Problem, that needs to be addressed ASAP. And in the BOP, only a few officers are helping us. I hope to speak some one soon to help and fix to remedy the situation, and problem!

THANK you.

Milin W. Bailey

(AKA) THE Boxing AFICIONADO

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) EDUCATION. MR. BAGley | DATE: 6/7/2022 |
|---|---|
| FROM: MILES BAILey | REGISTER NO.: 10759-067 |
| WORK ASSIGNMENT: ADMIN Orderly | UNIT: CAMPER. |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

ON MONDAY JUNE 5th I SPOKE WITH MR.
LARKIN, AND (CONS LArkiN) SAID tHEY WONt BE
CALCULATiNG oVR F.S.A Credits UNtil "NOVEMBER"
I HAVE tAKEN (25 to 30) ClassES IN 3 YEARS, CAN
You Please HeIp US, And give US AN UP DATE!
(AKA) THE BoXiNG !          (Do not write below this line)  THANK You
       AFicioNADo !                                Miles W Bailey

DISPOSITION:

) WiII be MonItorIng thiS

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 6**

TRULINCS  10759067 - BAILEY, MILES - Unit: BRO-I-B

-----------------------------------------------------------------------------------------------------

FROM: 10759067
TO: Bailey, Brittany; Calix, Pamala; Gordon, Jeremy; Hollis, Tonia; Hunter, Jim; Pinchback, Farrod; S Sample, Brandon; Wilson, Kim
SUBJECT: filed July 9th 2019 by attorney mike walker, alb!
DATE: 11/29/2020 01:25:19 PM

my client ,miles bailey, has informed me that he wishes to withdraw his guilty plea. in my review of Mr. bailey's case-in particular my case notes of our individual meetings and  the transcript of Mr. bailey's change of plea hearing- i do not see a basis for which a withdrawal of a guilty plea can be properly or ethically advisable by my office.the only basis that Mr. bailey may wish to withdraw of a guilty plea , would be that of "INEFFECTIVE ASSISTANCE OF COUNSEL", i do not believe that such a basis is one the the federal public defender's office can properly advise Mr. bailey.

 for these reasons, I respectfully ask for the court's "GUIDANCE" for a conference  or a representation hearing of this issue, at which time the court could make the appropriate inquires regarding Mr. bailey's intentions, ( a 63;  def July 9th 2019, letter) Esq., mike m. walker ,public defender's office, 39 north pearl street Albany new York, 12207 , 5th floor!

 hope to get some help from a lawyer to do my 2255, ineffective assistance of counsel, by Mathew traioner, of 39 n. pearl street, public defender's office in the city and county of Albany new York!

THIS WAS ON tHE RECORD FROM MAKE WALKER
FROM P.P. OFFICE IN AlBANY NY.

THANK You.
Miles W. Bailey

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

John M. Domurad
Clerk of Court

Daniel R. McAllister
Chief Deputy



James M. Hanley Federal Building
P.O. Box 7367 100 S. Clinton Street
Syracuse NY 13261-7367
(315) 234-8500

April 20, 2022

Miles Bailey
10759-067
DEVENS
FEDERAL MEDICAL CENTER
Inmate Mail/Parcels
P.O. BOX 879
AYER, MA 01432

Dear Mr. Bailey,

Enclosed please find a copy of receipt # SYR060714 as requested by Barbara Coles to be sent to you.

Regards,

Zach Cortese, Deputy Clerk

```
DUPLICATE

Court Name: NYN District Court-Syracuse
Division: 5
Receipt Number: SYR060714
Cashier ID: zcortese
Transaction Date: 04/18/2022
Payer Name: Barbara Coles
-----------------------------------
CRIMINAL DEBT
 For: MILES BAILEY
 Case/Party: D-NYN-1-17-CR-000302-001
 Amount:        $650.00
-----------------------------------
PAPER CHECK CONVERSION
 Amt Tendered:  $650.00
-----------------------------------
Total Due:      $650.00
Total Tendered: $650.00
Change Amt:     $0.00


A fee of $53.00 will be charged on
all returned checks.
```

TRULINCS 10759067 - BAILEY, MILES - Unit: DEV-I-A

---

FROM: 10759067
TO: Bailey, Brittany; Bailey, James; Black, Amore; Doe, John; George, Prince; Goldin, David; Gordon, Jeremy; Hjikia, Bedros; Shamberger, M'... 'ite, Bredan
SUBJECT: ...... 'n my back-story miles bailey
DATE: 09/04/2021 u5...44.

41 years ago i started in the boxing at ft. apache in the Bronx ny, then i went to south queens boys club in queens ny, then staritee city in Brooklyn with jimmy o, then my last stop was bed-sty do or die in Brooklyn ny located on Quincy and sumner ave with my new trainers George Washington and willy, my stable mates were mike Tyson, who left for Catskills with cus damato, mark breland 5x golden glover, Riddick bowe 2 x heavyweight champ, eddie mustfa ex- light heavyweight champ, eddie greg from winston salam north carolina now,, mike (the body snatcher) mccullum 3 x world champ from jamaica, ronald mcall 3 x golden glover, my sparring partner, and my best friend farrod m. pinchback, who went to colo, springs in 1980 with mike tyson, and nirmil lorick to win the jr. olymipic, i fought in the 1982 golden gloves, and was in the headlines of the daily news, beating harry neff, in an impressive decision, i then went on to lose to the jr. olympic champ (felix tito rasado) who went on to win 2 goldin gloves 1982-1983, and lost the the 3rd year to john wesley meekins in the 1984 open championship, fast forward to 2021, i have some blue chip prize fighters, that are with my trainer dan guerrido, who has been with them, # 717-278 -4193, dan is from philly, i started worriorz boxing in 2019 ;. before i came to jail with my lawyer dave goldin from albany n.y. 518 -626-0347, cell # 518-339-0770 to confirm, my than (assistant) shalon powell) was left in charge to hold down the fort until i got out of jail, i also barkeisha morrissy (702) 583-9599, doing all the strategic manevers to make this work, mike the body snatcher, 3 x world champ will help train the fighters 702-752-7679, to confirm. next sam douglas 347-783-4823, has help me in the past with another project gooseneck apparel, that will be worth "BILLIONS" once we can get the right basketball player on board, it is the way you shoot the basketball, then we have amore black our (P,r) person and future promoter, she came along with myself and than partner evander "real deal" holyfield when we did shows in philly, and started real deal promotions in atlantic city march of 2018, jim hunter from vegas 702-880-5500, was also helping to move things along, last my daughter barb, brit would have helped but she is with eddie hearns and match room boxing with anthony joshua and theyare from the u.k.

yours truly

miles w. bailey

aka . the boxing aficonado

*Miles W. Bailey* (signature)

FROM: Bailey, Brittany
TO: 10759067
SUBJECT: RE: Happy Father's Day
DATE: 06/24/2022 05:51:05 PM

Love you too... Just stay sane at all costs. Everything is going to be alright... Just a little bump in the road. You got this.

Tuesday morning is good. I'm in San Antonio now. Back to NYC on Sunday, we have press conference there Monday for Canelo Vs. GGG 3 then Tuesday night I'm going to the UK(Also going to Spain) until July 11th. Long couple of weeks but will be cool. I'm excited.

MILES BAILEY on 6/23/2022 10:06:27 PM wrote
love u much and i will keep pushing until it happens! i will call on tuesday after 10 when you are up or the evening which ever is best for you
-----Bailey, Brittany on 6/19/2022 8:36 PM wrote:

>

Happy Father's Day dad! Love you! <3

Federal Prison Camp Devens

# Certificate of Completion

# Miles Bailey

Has successfully completed "Healthier Me in the BOP"
– a 3 hour First Step Act (FSA) wellness class.

*In witness thereof, the undersigned, given this 9th day of June, 2021.*



_____  L. Taylor-Kepner, Teacher

# *Certificate of Completion*

Presented to

## Miles Bailey #10759-067

For successfully completing the

## Non-Residential Drug Abuse Program

On April 26, 2022

_____          _____
**Ms. Travers, DTS**                              **Dr. Park, DAPC**

**Federal Medical Center, Devens**

Date: 07/03/2022                                                                      Location: DEV
Time: 09:01:16 AM

# Federal Bureau of Prisons
## TRULINCS Account Transactions - Commissary
### Personal Inmate Information

**Inmate No: 10759067   Inmate Name: BAILEY, MILES**                    **Available Balance: $76.68**

| Date | Reference # | Transaction Type | Sender Last name | Amount |
|------|-------------|------------------|------------------|--------|
| 07/03/2022 | 1478 | BP 199 Request | | -$5.00 |
| 06/30/2022 | TL0630 | TRUL Withdrawal | *FILING Fee's* | -$2.00 |
| 06/27/2022 | 48 | Sales | | -$65.40 |
| 06/24/2022 | TL0624 | TRUL Withdrawal | | -$2.00 |
| 06/24/2022 | 33322175 | Western Union | SHAMBURGER | $60.00 |
| 06/23/2022 | TL0623 | TRUL Withdrawal | | -$10.00 |
| 06/23/2022 | 33322174 | Western Union | MILLEDGE | $100.00 |
| 06/21/2022 | 66 | Sales | | -$4.57 |
| 06/21/2022 | XICD0622 | Inmate Co-pay | | -$2.00 |
| 06/21/2022 | XICD0622 - 1418 | Debt Encumbrance - Released | | $1.35 |
| 06/21/2022 | XICD0622 - 1368 | Debt Encumbrance - Released | | $0.65 |
| 06/20/2022 | TL0620 | TRUL Withdrawal | | -$10.00 |
| 06/20/2022 | 33322171 | Western Union | SHAMBURGER | $17.00 |
| 06/20/2022 | XICD0622 - 1418 | Debt Encumbrance | | -$1.35 |
| 06/13/2022 | 101 | Sales | | $0.00 |
| 06/08/2022 | XICD0622 - 1368 | Debt Encumbrance | | -$0.65 |
| 06/06/2022 | 75 | Sales | | -$48.25 |
| 06/03/2022 | XFRP0622 | FRP Monthly Pymt | | -$46.00 |
| 06/03/2022 | XIPP0522 | Payroll - IPP | | $10.08 |

*TO SHOW 5$ CAME OUT OF MY ACCOUNT FOR tHe FILING Fees!*

*THANK You*
*Mileu w. Billy*

Inmate #: 10759067

```
  DEVNO  540*23 *            SENTENCE MONITORING          *     06-02-2022
PAGE 002          *          COMPUTATION DATA            *     14:51:11
                             AS OF 06-02-2022                  FILED
                                                        IN CLERKS OFFICE
REGNO..: 10759-067 NAME: BAILEY, MILES

                                                       2022 JUN 27 PM 1: 02

------------------------CURRENT OBLIGATION NO: 020 ------------------------
OFFENSE CODE....:  160     18:1028 FRAUD IDENTITY THEFT
OFF/CHG: 18:1028A(A)(1),(B)(2) & (B)(3) AGGRAVATED IDENTITY THEFT-CTS8,
        9,10.                                                DISTRICT OF MASS.

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   24 MONTHS
  TERM OF SUPERVISION............:    1 YEARS
  RELATIONSHIP OF THIS OBLIGATION
   TO OTHERS FOR THE OFFENDER....: C/S TO OBLG 010
  DATE OF OFFENSE................: 03-25-2014

------------------------CURRENT COMPUTATION NO: 020 ------------------------

COMPUTATION 020 WAS LAST UPDATED ON 07-31-2019 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 07-31-2019 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010, 020 020

DATE COMPUTATION BEGAN..........: 07-11-2019
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:   75 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    6 YEARS     3 MONTHS
AGGREGATED TERM OF SUPERVISION..:    3 YEARS
EARLIEST DATE OF OFFENSE........: 10-19-2012

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     03-07-2018    03-07-2018
```

```
G0002        MORE PAGES TO FOLLOW . . .
```

June 20      17/2      8/3

$60 - 9 - 8\frac{2}{3} = 42\frac{1}{3} \times 0.5 = \boxed{21.\frac{1}{6}}$

$\boxed{42}$

20 months ————— Served

10 months ————— Earned

$60 - 10 - 9 = 41 \times 0.5 = 20.5$ months

Gross — GCT — FTC = NEW RELEASE DATE

$\boxed{24 + 12}$          $\boxed{41}$

$59 - 30 = \boxed{\cancel{25}}$

$\boxed{\textcircled{39}}$

BREAK DOWN FOR
        FSA CREDITS

7-11-2019

7-11-2025

10-11-2025

11-06-2024

11-06-2023

5-06-2023   VIA FTC

11-6-2022   (6)

9-6-2022

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | | |
|---|---|---|---|
| **MILES BAILEY** | ) | Docket Nos. | 1:21-CV-1150 (FJS) |
| | ) | | 1:17-CR-302 (FJS) |
| **Plaintiff** | ) | | |
| **v.** | ) | | |
| | ) | | |
| **UNITED STATES OF AMERICA** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
UNDER 28 U.S.C. 2255 (DKT. 104, 1:17-CR-302 (FJS))**

Dated: December 10, 2021

CARLA B. FREEDMAN
United States Attorney
Northern District of New York

By: _/s/ Emily C. Powers_____
Emily C. Powers
Assistant United States Attorney
Bar Roll No. 5139205

The United States of America, by and through its attorney, the United States Attorney for the Northern District of New York, submits this response in opposition to the Motion to Vacate, Set Aside, or Correct Sentence, arising under 28 U.S.C. 2255 (the "Motion") (Dkt. 104, 1:17-CR-302 (FJS)), which was filed by *pro se* defendant Miles Bailey.

## JURISDICTION

Pursuant to 28 U.S.C. §§ 1331 and 2255, this Court has jurisdiction to consider the Motion, in which the defendant alleges he received ineffective assistance of counsel prior to the entry of his November 28, 2018 guilty plea.

## STATEMENT OF THE CASE

### A. Prior Proceedings

The defendant was initially charged by an indictment returned on September 28, 2017, alleging conspiracy to steal public money, theft of public money, and mail fraud. Dkt. No. 1. The Office of the Federal Defender of the Northern District of New York ("Federal Defenders") was assigned to represent the defendant, with attorney Matthew E. Trainor of the Federal Defenders entering an appearance. *See* Dkt. No. 9. The defendant and the government thereafter entered into a written plea agreement and a change of plea hearing was scheduled for July 6, 2018.

On July 5, 2018—the night before the scheduled change of plea hearing—Mr. Trainor filed a letter seeking to be removed as counsel for the defendant on the basis that their relationship had become "irrevocably damaged to the point where [Mr. Trainor] could no longer adequately represent" the defendant. Dkt. No. 30. The letter also notified the Court that the defendant had changed his mind and did not wish to enter a guilty plea the next day. *Id.*

The Court held a representation hearing on July 6, 2018, wherein the Court granted Mr. Trainor's request to be relieved as counsel for the defendant. However, the Court ruled that the

1

Federal Defenders would remain assigned to the case. Dkt. text entry dated July 6, 2018. Mr. Trainor was replaced by attorneys Paul Evangelista and Michael McGeown-Walker—both attorneys with the Federal Defenders—who represented the defendant for the remainder of the proceedings, through sentencing, in the district court.

On July 26, 2018, a grand jury returned a superseding indictment charging the defendant with one count of conspiracy to steal public money, in violation of 18 U.S.C. §§ 371, 641; six counts of theft of public money, in violation of 18 U.S.C. § 641; and three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Dkt. No. 33.

On November 28, 2018, the defendant pleaded guilty, without a plea agreement, to all counts in the superseding indictment. Dkt. entry dated Nov. 28, 2018. On July 11, 2019, the Court sentenced the defendant to a total term of imprisonment of 75 months, which included a mandatory minimum of 24 months for the three counts of aggravated identity theft, to be followed by a three-year term of supervised release. Dkt. text entry dated July 11, 2019. This sentence was at the bottom of the applicable guidelines range. *See* Dkt. No. 98 at 4; Dkt. No. 70 ¶ 89 (Presentence Investigation Report).

On December 23, 2019, the defendant appealed his conviction, on the grounds that (1) his guilty plea was in violation of Rule 11(b)(2) of the Federal Rules of Criminal Procedure because the Court did not ask the defendant during the plea hearing whether the defendant's plea had been induced by threats, (2) the Court abused its discretion in denying a motion to withdraw the defendant's guilty plea on the basis that it was induced by threats (filed roughly seven months after the defendant entered his plea), and (3) his sentence was unreasonable. *See* Dkt. No. 98 at 2; Dkt. No. 24 in Case No. 19-2198 (2d Cir.), at 8. On July 21, 2020, the Second Circuit rejected the defendant's arguments and affirmed his conviction and sentence. *See* Dkt. 98. As relevant to

2

the Motion, the Second Circuit rejected both the defendant's Rule 11 challenge and his argument that the Court abused its discretion in denying the defendant's motion to withdraw his guilty plea. With regards to both, the Second Circuit determined that the defendant's constitutional rights had not been violated in connection with any purported threat by anyone to charge the defendant's family members if he did not plead, finding "Bailey has not raised a significant question as to the voluntariness of his plea. . . . he did not and has not identified who [the person who made the threats] is or what exactly was said, and the government has represented both here and in the district court that no person working on its behalf made any such statement." *Id.* at 7.

### B. The Section 2255 Petition

On October 12, 2021, the defendant filed his Section 2255 Motion, wherein he seeks to set aside his conviction and sentence by asserting an "ineffective assistance of counsel" claim. *See* Dkt. 104. There is a one-year deadline to file a Section 2255 motion. 28 U.S.C. § 2255(f)(1). The clock for this deadline begins to run ninety days from the date a defendant's sentence becomes final. *Clay v. United States*, 537 U.S. 522, 532 (2003); S. Ct. Rule 13 (a petition for a writ of certiorari must be filed within 90 days after entry of the judgment or the denial of rehearing). Here, the Second Circuit affirmed the defendant's sentence in a Mandate dated July 21, 2020, so his deadline to file a Section 2255 motion was October 19, 2021. Accordingly, the motion is timely. The United States was ordered to file a response by November 18, 2021, although on November 3, 2021, the Government requested a four-week extension of time to file. The Court granted that request.

The defendant argues[1] in the Motion that he is entitled to have his sentence vacated, set aside, or corrected because he did not have effective assistance of counsel.[2] The defendant's ineffective-assistance-of-counsel claim is premised on assertions that (1) his attorneys did not locate certain unspecified witnesses to assist in his defense and failed to investigate fully the charges leveled against him, which would have revealed he was merely the "fall guy" (Ground One); (2) a grand jury witness lied about him on the stand (Ground Two); (3) he was coerced into pleading guilty because unspecified individuals told him that the government planned to charge his father and daughter if the defendant did not plead guilty (Ground Three); and (4) a news story published in the Albany Times Union a few days before the defendant pleaded guilty included unfavorable coverage of him, which meant that he would not have been able to receive a fair trial (Ground Four).[3] Throughout the Motion, the defendant suggests that he holds Mr. Trainor largely responsible for ineffectiveness in representation, especially with regard to Ground One. *See* Dkt. No. 104 at 3.

---

[1] The government construes the petition liberally in light of the fact that the defendant has filed *pro* se; arguments raised by a *pro se* petitioner should be liberally construed and all reasonable inferences should be drawn from those arguments. *See generally Haines v. Kerner*, 404 U.S. 519 (1972).

[2] The defendant also seeks "clemency," *see* Dkt. No. 104 at 12; however, 28 U.S.C. § 2255 does not provide for clemency, *see* 28 U.S.C. § 2255, so the government does not address this issue.

[3] Ground Four could be construed as a standalone claim undermining the constitutionality of the defendant's conviction, but the petition styles itself overwhelmingly as seeking relief on ineffective-assistance-of-counsel grounds. *See* Dkt. No. 104 at 4, 5, 7, and 8 (explaining, with regard to each Ground for relief included in the Motion, that the defendant did not raise on direct appeal each Ground because "my lawyers did not do a good job."). Notably, if Ground Four were a standalone claim undermining the voluntariness of the defendant's conviction, that claim would be procedurally barred. *See Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error."). The defendant has made no effort to show cause for why he did not raise Ground Four on appeal, nor, as explained elsewhere in the government's response, to demonstrate how he was prejudiced by any error.

4

## APPLICABLE LAW

Section 2255 of Title 28 of the United States Code codifies the common-law writ of habeas corpus in relation to federal criminal offenses. *See United States v. Hayman*, 342 U.S. 205, 210-19 (1952) (outlining historical context of 28 U.S.C. § 2255). Habeas corpus relief is an extraordinary remedy. *See, e.g., Hill v. United States*, 368 U.S. 424, 428 (1962). Accordingly, this Circuit holds that collateral attack under Section 2255 is generally available only for a constitutional error, lack of jurisdiction, or "an error of law or fact that constitutes 'a fundamental defect which inherently results in [a] complete miscarriage of justice.'" *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

"Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation omitted). One of these, "the so-called mandate rule bars re-litigation of issues already decided on direct appeal, . . . [and] also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Id.* "To determine whether an issue may be reconsidered on remand, a district court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Id.* (internal quotation omitted). In keeping with this approach, the Second Circuit has held that the mandate rule can bar "ineffective assistance claims in a Section 2255 proceeding when the

5

factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate."[4] *Id.* at 54.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Accordingly, under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a Section 2255 petition may be granted if the movant can show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) counsel's performance was so unreasonable that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Id.* at 687; and (2) counsel's ineffectiveness prejudiced the defendant such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To succeed on an ineffective assistance of counsel claim in the context of guilty plea, "petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted). If a petitioner shows that he was subjected to objectively unreasonable representation, he must still show that he was prejudiced, in that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Crucially, "[a] defendant who pleads guilty unconditionally while

---

[4] An ineffective assistance-of-counsel not raised on direct appeal (which would otherwise be barred by another limiting rule, the "procedural default" rule, *see Yick Man Mui*, 614 F.3d at 54) may be brought in a Section 2255 motion regardless of whether it could have been raised, or was raised, on direct appeal. *See id.*; *Massaro v. United States*, 538 U.S. 500, 508-09.

represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996).

When reviewing a Section 2255 claim, the reviewing court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2nd Cir. 1990) (quoting *Strickland*, 466 U.S. at 686). Finally, the defendant bears the burden of proving eligibility for relief under Section 2255. *Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## ANALYSIS

### 1. The Merits

The Court should deny the defendant's Motion because it fails to establish that the defendant's attorneys' performance fell below an objective standard of reasonableness, or that, but for the alleged errors, the outcome of the proceedings would have been different. First, Ground Three cannot serve as a basis for the Motion because it is barred by the "mandate rule." *See Yick Man Mui*, 614 F.3d at 53 (explaining mandate rule forecloses "ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate."). In affirming the defendant's conviction, the Second Circuit considered and rejected the defendant's assertion that his constitutional rights were violated in connection with any threat made regarding potential criminal charges for the defendant's relatives.

7

As to each of Grounds One, Two, Three, and Four, the defendant asserts conclusory, speculative, and unsupported allegations that fail to establish his burden of showing that counsel's performance fell below "acceptable standards." *Parisi*, 529 F.3d at 138. First, to the extent that the defendant blames Mr. Trainor for the Federal Defenders' alleged failures, the record shows that the Court appointed new counsel for the defendant four months before the defendant entered his eventual guilty plea, and that Mr. Evangelista and Mr. McGeown-Walker were fully prepared to proceed to trial on November 28, 2019—although the defendant changed his mind at the last minute and decided instead to plead guilty. Second, even under caselaw affording for liberal construction of *pro se* pleadings, the defendant has not raised facts sufficient to demonstrate any error by counsel, let alone that he suffered any prejudice as a result.

The defendant used a form to draft the Motion he filed. That form includes pre-formatted sections for filling out the information needed by the Court to evaluate a Section 2255 motion. There is space for the filer to fill out information for up to four grounds; the defendant used all of these but did not file additional pages to supplement the form Motion. Directly under the space provided for briefly stating each "ground" for relief, the form provides space for an inmate challenging his or her conviction to write down the "supporting facts" for each ground. In each of these portions of the form, the defendant either simply restates his grounds through conclusory assertions, or references things and people that bear little to no apparent relationship to his grounds for seeking relief.

For example, as to Ground One, the defendant argues that "my lawyers did not get the witness on my behalf." In the "supporting facts" section, the defendant makes reference to what appear to be wholly irrelevant facts, including that "[a]ll of [his] family members[,]" along with other named persons were "working for him," that he had "commercials on TV which you can

8

still pull up on You Tube Video right now." Finally, the defendant makes references to his daughter. It is impossible to glean from what the defendant has written the identities of any persons who could have provided helpful testimony, let alone how the content of that testimony could have led to a successful defense or changed the defendant's decision to plead guilty.

As to Ground Two, the defendant asserts that a certain grand jury witness lied on the stand. In support, the defendant re-states his basic conclusion that a grand jury witness lied and points to a statement in the government's discovery that, apparently, constitutes the purported lie. However, the defendant does not make any effort to explain precisely why the statement is untrue or otherwise objectionable—let alone how, if untrue, it would have affected the overall proceedings or the defendant's decision to plead guilty.

Similarly, with respect to Ground Three—notwithstanding the fact that the Court cannot consider this ground because it is barred by the "mandate rule"—the defendant asserts that "they" were going to charge his father and "(baby) Barbara Coles." Then, the defendant states in the "supporting facts" section that his father has "over 25 years" of experience preparing taxes in the Bronx. Yet, the defendant makes no effort to explain how his father's qualifications as a tax preparer relate at all to the alleged threat that induced him to plead guilty or led to any deficient performance by counsel.

As to Ground Four, the defendant states "Times Union News Article 11-25-2018 Sunday Front Page," and writes in support that there was a "big spread" in the Times Union about the defendant being an "informant," that also described him as "beating homeless people out of tax returns and money which I never did." The defendant goes on to assert that this news story meant there was "no way" he could have received a fair trial. Yet, the defendant does nothing to explain precisely how the story would have made a fair trial impossible and makes no attempt at all to

connect his attorneys' performance to the existence of the news item. Last, any negative impact on the defendant's constitutional rights is entirely speculative: more than likely, had the case gone to trial, counsel would have addressed concerns about juror prejudice stemming from the Times Union coverage during the jury selection process.

None of the above-described "facts" come close to explaining how any Sixth Amendment violation actually occurred, and the defendant has performed no legal analysis or cited any caselaw to suggest otherwise. Accordingly, the Motion fails to show how anything counsel did or did not do actually worked to the defendant's detriment.[5] Even assuming defense counsel erred, the defendant has also completely failed to show that he was prejudiced by any error. *See Strickland*, 466 U.S. at 687 (stating that, in order to prevail of an ineffective assistance of counsel claim, a prisoner must show that counsel's performance was deficient *and* that prejudice resulted from the deficiency). Finally, each ground raised by the defendant "relat[es] to events occurring prior to the entry of the guilty plea"; thus, none serves as a permissible basis to attacking defense counsel's performance in light of the Second Circuit's determination that there was no constitutional defect in the defendant's guilty plea. *See Coffin*, 76 F.3d at 497. Simply put, the defendant's Motion should be denied because it entirely fails to establish entitlement to relief under 28 U.S.C. § 2255.

### 2. Evidentiary Hearing

The defendant is not entitled to an evidentiary hearing. First, the defendant has not requested one. Second, district courts have discretion concerning whether to hold a hearing before deciding a Section 2255 petition. *See Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir.

---

[5] The defendant also argues (without providing any support) that he was "supposed" to receive a sentence lower than the one he did receive. But the defendant does not explain why he is of the belief he should have received a lower sentence than he did, and the record reflects that the Court imposed a sentence at the low-end of the guidelines.

2001) (affirming denial of Section 2255 petition and concluding it was not abuse of discretion for district court judge to conclude that evidentiary hearing would not offer any reasonable chance of altering its view of the facts where petitioner raised generic claim based solely on highly self-serving and improbable assertions). Here, as in *Chang*, the defendant has raised generic claims based solely on highly self-serving, conclusory, and speculative assertions that are not supported by any actual facts. Accordingly, there is no need for any evidentiary hearing and the Court need not require one to be held.

## CONCLUSION

The defendant has not established entitlement to relief under 28 U.S.C. § 2255. The Court is barred by the "mandate rule" from considering Ground Three of the defendant's Motion, and the facts provided in support of Grounds One through Four do not and are not capable of demonstrating any error by his attorneys. The defendant has also failed to show he suffered any prejudice. For these reasons, the Court should deny the Motion.

11

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2021 the foregoing was electronically filed with the

clerk of the court by using the CM/ECF system. I further certify that on this date the foregoing

document and the notice of electronic filing were placed in first-class mail to the following non-

CM/ECF participant:

> Miles Winston Bailey
> Prisoner No. 10759-067
> FMC-Devens
> P.O. Box 879
> Ayer, Massachusetts 04132

> */s/ Emily C. Powers*
> Emily C. Powers
> Assistant United States Attorney

**General Docket**
**Court of Appeals, 2nd Circuit**

| | |
|---|---|
| **Court of Appeals Docket #:** 19−2198 | **Docketed:** 07/18/2019 |
| United States of America v. Bailey | **Termed:** 07/21/2020 |
| **Appeal From:** NDNY (SYRACUSE) | |
| **Fee Status:** IFP Granted | |

**Case Type Information:**
   **1)** Criminal
   **2)** Direct Criminal
   **3)** none

**Originating Court Information:**
   **District:** 0206−5 : 1:17−cr−302−1
   **Trial Judge:** Frederick J. Scullin, Jr., U.S. District Judge
   **Date Filed:** 09/28/2017

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|---|---|
| 07/12/2019 | 07/12/2019 | 07/17/2019 | 07/18/2019 |

**Prior Cases:**
  None

**Current Cases:**
  None

**Panel Assignment:**    Not available

19-2198 United States of America v. Bailey

| | |
|---|---|
| United States of America<br>        Appellee USA | Steven David Clymer, Assistant U.S. Attorney<br>[COR LD NTC US Attorney]<br>United States Attorney's Office for the Northern District of<br>New York<br>Firm: 315-448-0672<br>P.O. Box 7198, 100 South Clinton Street<br>Syracuse, NY 13261 |
| | Carina Hyatt Schoenberger, Assistant U.S. Attorney<br>[COR NTC US Attorney]<br>United States Attorney's Office for the Northern District of<br>New York<br>Firm: 315-448-0672<br>P.O. Box 7198, 100 South Clinton Street<br>Syracuse, NY 13261 |

---

| | |
|---|---|
| Miles Bailey<br>        Defendant - Appellant | James Egan, Assistant Federal Public Defender<br>**Terminated:** 08/15/2019<br>Direct: 315-701-0080<br>[COR LD NTC Fed Public Defender]<br>Office of the Federal Public Defender<br>Northern District of New York<br>3rd Floor<br>4 Clinton Square<br>Syracuse, NY 13202 |
| | Brendan Michael White, -<br>Direct: 646-303-0267<br>[COR LD NTC CJA Appointment]<br>Brendan M. White, Esq.<br>#6-D<br>524 East 20th Street<br>New York, NY 10009 |

*Handwritten annotations:* MY APPEAL FroM 2019 — MY APPEAL LAWYER → (pointing to Brendan M. White, Esq.)

*Handwritten:* EMAIL ADDRESS IS BREDAN@WHI WHI.COM

TRULINCS  10759067 - BAILEY, MILES - Unit: DEV-I-A

---------------------------------------------------------------------------------------------

FROM: 10759067
TO: Bailey, Brittany; Doe, John; Goldin, David; Gordon, Jeremy; Hollis, Terry; Thomas, Harley; White, Bredan; Wilson, Chloe
SUBJECT: judge (fjs) scullin case # 117-cr-302
DATE: 05/04/2022 04:47:27 PM

I am sending back a reply to get (RECONSIDERATION) on my case 4-27-2022, i am addressing the 4 points the (ausa) attorney's Emily c. powers and Alicia Suarez brought up in the case, I did give several other points in the (8 to10) letters that were attached to the original 2255 plus rebuttals, filed in oct of 2021 and Jan of 2022, and I am also asking a lawyer and counsel for the 2nd time / to help navigate through this properly and efficiently, to have a fair outcome, and i hope to get an "EVIDENTIARY" hearing to bring to light what happen, when Gregory kornegay "aka" lil man dob (3-15-1973) , lied to a federal grand jury with his lawyer from Albany new York Trevor hannigan, while under oath, Greg k , also lied to agent David lynch from the irs, when question on the federal income tax refund check that he cashed in his t.d. bank account in Albany new York, Greg k, said he received the check from "MILES BAILEY" and them Eric thorne dob" 2-22-1968, however Greg got the check from his partner in crime James Simmons aka" lil jay dob 4-30-1968, who is currently in jail now for sell crack cocaine in Albany new York, it was all over the times union newspaper in Albany new York dec of 2021! the income tax  refund check was for a homeless man in buffalo new York that, James Simmons found in the streets, and did the man's taxes for a few years!

thank you

miles w. bailey

Miles w. Bailey

Docket # L/2/- CV-1150 FJS) Southern
District

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

v.

**1:17-CR-302**
**(FJS)**

**MILES BAILEY,**

Defendant.

**APPEARANCES**

**OF COUNSEL**

**OFFICE OF THE UNITED STATES**
**ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Room 218
Albany, New York 12207
Attorneys for the United States

**EMILY C. POWERS, AUSA**
**ALICIA SUAREZ, AUSA**

**MILES BAILEY**
**10759-067**
Devens Federal Medical Center
Inmate Mail/Parcels
P.O. Box 879
Ayer, Massachusetts 01432
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION AND BACKGROUND

On November 28, 2018, Miles Bailey ("Defendant") pled guilty to all ten counts of the

Superseding Indictment charging him with conspiracy to steal public money, theft of public

money, and aggravated identity theft in violation of 18 U.S.C. §§ 371, 641, and 1028A(a)(1).

*See* Dkt. No. 84, Amended Judgment. On July 11, 2019, the Court sentenced Defendant to a

total term of 75 months' imprisonment with 3 years of post-release supervision. *See id.*; Dkt.

No. 86, Sentencing T., at 16-17. Defendant appealed the judgment to the Second Circuit, which

upheld his judgment of conviction and sentence on August 12, 2020. *See* Dkt. 98. Pending

before the Court is Defendant's motion, pursuant to 28 U.S.C. § 2255, to vacate his judgment

and correct his sentence. *See* Dkt. No. 104. Defendant's motion is based on the following four

grounds for relief: (1) his attorneys allegedly failed to get a specific witness to assist in his

defense and to fully investigate the charges leveled against him; (2) a grand jury witness lied

about him on the stand; (3) he was coerced into pleading guilty under the threat that, if he did

not, the Government would charge his father and minor daughter; and (4) the Albany Times

Union published an article on November 25, 2018, that included unfavorable coverage of him

and precluded him from receiving a fair trial. *See generally id.*

## II. DISCUSSION

### A. Legal Standard

"Section 2255 of Title 28, U.S.C., provides that a prisoner in custody under sentence of a

federal court may file a motion in the 'court which imposed the sentence to vacate, set aside or

correct the sentence.'" *Hill v. United States*, 368 U.S. 424, 426 (1962) (quoting [28 U.S.C.

§ 2255]). The statute provides four grounds upon which a court may grant such relief: (1) "that

the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that

the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess

of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral

attack[.]" 28 U.S.C. § 2255(a).

The Supreme Court has construed these four grounds for relief narrowly, following the

general rule that a § 2255 collateral attack is not allowed to "do service for an appeal." *Adams*

*v. United States ex rel. McCann*, 317 U.S. 269, 274 (1942) (citations omitted). However, "an

ineffective-assistance-of-counsel claim may be brought [for the first time] in a collateral

proceeding under § 2255, whether or not the [defendant] could have raised the claim on direct

appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Mui v. United States*,

614 F.3d 50, 51 (2d Cir. 2010) (holding that "a defendant who raises on direct appeal

ineffective assistance claims based on the strategies, actions, or inactions of counsel that can be,

and are, adjudicated on the merits on the trial record, is precluded from raising new or repetitive

claims based on the same strategies, actions, or inactions in a Section 2255 proceeding.

However, such a defendant is not precluded from raising new ineffective assistance claims

based on different strategies, actions, or inactions of counsel in a subsequent Section 2255

proceeding.").

## B. Ineffective assistance of counsel

In liberally construing Defendant's pro se petition for habeas relief, as the Court is

required to do, *see Killingbeck v. United States*, Nos. 5:12-CR-63-DNH-1; 5:18-CV-120-DNH,

2018 U.S. Dist. LEXIS 235336, *7 (N.D.N.Y. May 3, 2018) (Hurd, J.) (quotation omitted), the

Court finds that Defendant appears to allege that his attorneys, specifically Matthew Trainor,

AFPD, Paul Evangelista, AFPD, and Michael McGeown-Walker, AFPD, were ineffective.

The Sixth Amendment guarantees the right to counsel, which the Supreme Court has

interpreted to mean the right to the *effective* assistance of counsel. *See Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984). "A convicted defendant's claim that counsel's

assistance was so defective as to require reversal of a conviction ... has two components." *Id.*

at 687. The Supreme Court explained those components as follows:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second, the
> defendant must show that deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable. Unless a defendant makes both showings, it
> cannot be said that the conviction ... resulted from a breakdown
> in the adversary process that renders the result unreliable.

*Id.*

Regarding the first step—whether counsel was functioning as "counsel" guaranteed by

the Sixth Amendment—the Supreme Court noted that "the defendant must show that counsel's

representation fell below an objective standard of reasonableness." *Id.* at 688. "The proper

measure of attorney performance remains simply reasonableness under prevailing professional

norms." *Id.* The *Strickland* court noted that "[j]udicial scrutiny of counsel's performance must

be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

perspective at the time." *Id.* "[A] court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" *Id.* (quotation omitted).

With respect to the second step—whether counsel's conduct prejudiced the defendant—

"[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Notably, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

In *Hill v. Lockhart*, the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). According to the Court in *Hill*, the first half of the *Strickland* test does not change in the context of guilty pleas. *See id.* However, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Id.* at 59.

With respect to Defendant's first ground for relief, he argues that, despite his request, his attorneys failed to get a statement from Eric Thorne that would have aided in his defense. *See* Dkt. No. 104 at 3. According to Defendant, "Greg K." allegedly pointed to both Mr. Thorne and Defendant as having provided him with a stolen check. *See id.* at 5. Defendant did not explain what he expected Mr. Thorne would have said in aid of his defense. *See generally id.* However, even if the Court were to presume that Mr. Thorne would have denied that he and Defendant gave Greg K. the stolen check, Defendant has not alleged that there was a reasonable probability that, if that statement had been available, he would not have pled guilty and would have insisted on going to trial.

Defendant also included in the first ground of his petition a list of his family members who worked for him, someone named Eric Ruth, from "Lost Boyz" music group, and "Maria" the "secretary" for his business – all of whom he believed his attorneys should have gotten as "witness[es] on [his] behalf to help [him]." *See id.* at 4. Even if the Court were to find that

- 5 -

Defendant's attorneys' conduct in failing to get statements from those witnesses fell outside of the wide range of reasonable professional assistance, the Court further finds that Defendant has not alleged by a preponderance of the evidence that that conduct prejudiced him in any way. For example, Defendant did not explain what he expected any of those witnesses to have said in their statements or how they would have assisted him in any way.

Although Defendant argues otherwise now, at the time he pled guilty, he informed the Court that he was satisfied with his attorneys' representation of him, that it was in his best interest to plead guilty, and that he was aware that, by pleading guilty, he gave up certain rights, including to examine and cross-examine witnesses, produce his own witnesses, and testify in his own case. *See* Dkt. No. 65, Plea T., at 3-4. Mr. McGeown-Walker, acting as Defendant's attorney at his plea, indicated that he met with Defendant over "the past several hours" – as trial was scheduled to commence that day – and Defendant ultimately concluded that it was in his "best interest" to go forward with a guilty plea rather than a trial that "would likely put him in a much more precarious situation pertaining to a conviction and ultimately a sentence." *See id.* at 4.

Additionally, at the time Defendant pled guilty, the Government asserted that it could prove beyond a reasonable doubt that Defendant "conspired with others to carry out a stolen identity tax refund fraud scheme against the United States," and that, from March 2011 through at least July 2014, Defendant "and other conspirators knowingly submitted fraudulent income tax returns to the Internal Revenue Service, an agency within the United States Department of the Treasury," on behalf of "at least 50 individual victims." *See id.* at 8. According to the Government, the tax returns falsely claimed that the individuals were entitled to income tax refunds from the federal government. *See id.* Defendant and the conspirators then obtained the

- 6 -

resulting fraudulent tax refund checks – which were issued in amounts greater than $1,000 –
and deposited the fraudulent and stolen refund checks into bank accounts in this District that he
controlled. *See id.* Defendant then transferred a portion of the fraudulent proceeds to his co-
conspirators and spent the proceeds himself. *See id.* at 9. Defendant admitted that those facts
were, in essence, correct. *See id.* at 10. In light of these facts and the evidence the Government
had to support them beyond a reasonable doubt, the Court finds that Defendant's attorneys'
conduct in failing to obtain certain witnesses' statements did not unfairly prejudice him and
there is no indication he would have gone to trial if he had those statements.

    With respect to Defendant's second ground, that Greg K. lied to the grand jury and that
Defendant's attorneys should have raised that issue before the Court, Defendant does not allege
that his attorneys were aware that the witness lied to the grand jury or to the federal agent to
whom he reported receiving the stolen check. *See* Dkt. No. 104 at 5. Furthermore, other than a
general denial, Defendant does not offer any support to demonstrate that Greg K., in fact, lied
about from whom he had received the stolen check. *See id.* Thus, the Court finds that
Defendant's attorneys did not act unreasonably in failing to raise this issue before the Court or
that such omission prejudiced Defendant by convincing him to plead guilty.

    Thirdly, Defendant generally asserts that the Government was going to charge his father
and minor daughter as co-conspirators in a new indictment, which apparently influenced his
decision to plead guilty, and his "lawyers did not do a good job" of raising that issue. *See id.* at
6-7. Initially, the Court finds that Defendant is precluded from raising this ground in the
pending motion. As the Second Circuit has held, "[i]n the context of Section 2255 proceedings
involving claims of ineffective assistance of counsel," courts apply "the mandate rule to bar
claims raised and resolved on direct appeal." *Mui*, 614 F.3d at 53 (citations omitted). The

- 7 -

Second Circuit has "also applied the mandate rule to bar ineffective assistance claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate." *Id.* (citation omitted).

Defendant raised this issue on his own at sentencing, informing the Court that he believed that a "cop" – later alleged to be Thomas Kubisch, an investigator for the public defender's office – said to him that, if he did not take the plea, the Government would charge his father and daughter, which the Government denied. *See* Dkt. No. 86 at 15-16. On Defendant's direct appeal, he argued that the Court erred in failing to ask him whether he had been forced or threatened to plead guilty and whether Mr. Kubisch's remark influenced his decision. *See* Dkt. No. 98 at 4. The Second Circuit concluded that, even if the Court erred in failing to ask Defendant about pressure to plead guilty, such error did not prejudice Defendant because there was no evidence that he would not have entered the plea "'but for the error[.]'" *See id.* at 6 (quoting *Gonzales*, 884 F.3d at 461). Thus, because the Second Circuit addressed the factual predicates of this ground on Defendant's direct appeal, the Court finds that the mandate rule bars Defendant from raising this issue again with respect to his alleged ineffective assistance of counsel claim.

Notwithstanding the mandate rule, the Court additionally notes that Defendant does not indicate why he believes that the Government was going to charge his family members as new co-conspirators or if his attorneys were aware of this alleged fact. During the plea allocution, Mr. McGeown-Walker – whom Defendant confirmed represented him satisfactorily – remarked that he believed that Defendant was pleading guilty out of "his own free will with a full understanding of the consequences." *See* Dkt. No. 65 at 3-4. Defendant also confirmed that he

- 8 -

did not receive any promises with respect to his plea. *See id.* at 7-8. Without any evidence to support Defendant's claim that he pled guilty in response to pressure from the Government that it would indict his family members, the Court finds that Defendants' attorneys did not act unreasonably in failing to raise this issue before the Court.[1]

Finally, Defendant appears to argue that his attorneys acted unreasonably in that they did not raise an issue before the Court as to whether Defendant could receive a fair trial in this District because the Albany Times Union allegedly published a front-page article about Defendant in which it called him an "informant" and stated that he "beat homeless people out of tax returns." *See* Dkt. No. 104 at 8. When asked why he did not raise this issue in his direct appeal, Defendant explained that he "tried but [his] lawyers did not do a good job[.]" *See id.* Notably, Defendant did not attach a copy of the article to his petition or to any of his subsequent submissions. *See generally* Dkt. Nos. 104, 114, 117, 118, 120, 121, 123, 125. Even if Defendant's attorneys acted unreasonably in failing to raise this issue before he pled guilty, the Court finds that the error would not have prejudiced Defendant. As the Government points out in its response, if Defendant had gone to trial, his attorneys likely would have raised the issue when conducting voir dire of the jury pool to eliminate any jurors who might have read the article or been biased by it. Beyond this mere speculation, there is no evidence that Defendant chose to plead guilty rather than go to trial because of his fear that, due to his attorneys' omissions regarding the newspaper article, he would not get a fair trial. Therefore, the Court

---

[1] Nonetheless, even if Defendants' attorneys failed to act as counsel as the Constitution requires when omitting this information, the Court finds, as the Second Circuit did, that Defendant has not shown that it impacted his ultimate decision to plead guilty rather than go to trial. *See* Dkt. No. 98, 2d Cir. Mandate, at 5-6.

finds that Defendant's attorneys' conduct did not render them ineffective under the Sixth

Amendment.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion pursuant to 28 U.S.C. § 2255 to vacate his judgment

and correct his sentence, *see* Dkt. No. 104, is **DENIED**; and the Court further

**ORDERS** that, because Defendant has not made a substantial showing of a denial of a

federal right, no certificate of appealability shall issue, *see* 28 U.S.C. § 2253(c)(2).


**IT IS SO ORDERED.**


Dated:  April 27, 2022
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge